Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9490 | **DATE** | 9/6/2002 |
| **CASE TITLE** | LUCIA MEDINA vs. CITY OF CHICAGO, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motions for summary judgment [81-1] [82-1] are granted in part and denied in part. Counts I through VIII are dismissed with prejudice. Defendant Marne Riordan is dismissed from this action (agreed) with prejudice. The motion is denied as to Counts IX through XV. The joint pretrial order with jury instructions shall be presented on October 1, 2002 at 9:00 a.m. Plaintiff's draft shall be submitted to defendants by September 23, 2002. Trial is set on October 21, 2002 at 9:00 a.m. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 10 2002 | 104 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | CV | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 9/6/2002 | |
| | | | date mailed notice | |
| | CB | courtroom deputy's initials | PW | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



SEP 1 0 2002

| | |
|---|---|
| LUCIA MEDINA, ) | |
| ) | |
| Plaintiff, ) | No. 01 C 9490 |
| ) | |
| v. ) | Suzanne B. Conlon, Judge |
| ) | |
| CITY OF CHICAGO, EDWARD RANZZONI, ) | |
| DAVID DISANTI and MARNE RIORDAN, ) | |
| ) | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Lucia Medina ("Medina") initially filed this action against the City of Chicago ("City") and police officers Marne Riordan ("Riordan"), Edward Ranzzoni ("Ranzzoni") and David Disanti ("Disanti")(collectively, "defendant officers") in the Circuit Court of Cook County, Illinois for the alleged wrongful death of Juan Vega ("Vega"). The City timely removed the action to this court based on federal question jurisdiction. Thereafter, Medina served the defendant officers. As administratrix of Vega's estate, Medina alleges violations of 42 U.S.C. § 1983 ("§ 1983") against the City (Counts XII, XIII, XIV, XV) and defendant officers (Counts IX and X), negligence and willful and wanton conduct in violation of the Illinois Wrongful Death Act, 740 ILCS 180/1 against the City (Counts I and II) and defendant officers (Counts V and VI), negligence and willful and wanton conduct in violation of the Illinois Survival Act, 755 ILCS 5/27-6, against the City (Counts III and IV) and defendant officers (Counts VII and VIII) and indemnity against the City (Count XI) for defendant officers' conduct. The City and defendant officers (collectively, "defendants") now

1

104

move for summary judgment on all counts of the complaint pursuant to Federal Rule of Civil Procedure 56. Medina concedes summary judgment on the claims against Officer Riordan are proper.

## BACKGROUND

### I. Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to summary judgment motions. In response to a motion for summary judgment, Local Rule 56.1 requires the non-moving party to submit a response "to each numbered paragraph in the moving party's statement [of material facts], including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(A). All relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary material." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000); *Stewart v. McGinnis*, 5 F.3d 1031, 1034 (7th Cir. 1993).

According to defendants, Medina's responses to ¶¶ 6, 12, 15, 17, 20, 22 and 25 of defendants' statement of facts fail to cite record evidence supporting the denials. In her responses to ¶¶ 6 and 15, as well as ¶ 11, Medina fails to cite facts that contradict defendants' factual statement. In contrast, Medina properly cites facts contrary to the defendants' version of events in her responses to ¶¶ 12, 17, 20, 22 and 25. Therefore, only ¶¶ 6, 11 and 15 of defendants' statement of facts, if properly supported, are deemed admitted.

Without discussion, defendants next claim Medina relies on several inadmissible documents in responding to ¶¶ 7, 8, 11, 12, 13, 17, 21, 22 and 25 of defendants' statement of facts. *See Woods*

2

*v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000)(evidence submitted at the summary judgment stage must be admissible at trial). Specifically, Medina offers several City documents, including documents prepared and/or signed by the defendant officers. Pl. Resp. to Def. Facts at Ex. C (statement signed by Officer Bernath), Ex. D (statement signed by Officer Riordan), Ex. E (police report signed by Officers Bernath and Riordan); Ex. H (statement signed by Officer Disanti); Ex. I (statement signed by Officer Ranzzoni); Ex. J (report prepared by Office of Professional Standards Investigator James Lukas); Ex. P (report prepared and signed by Officer Bernath); Ex. Q (report prepared and signed by Officer Ranzzoni); and Ex. W (report prepared and signed by Officer Disanti) and Ex. X (report prepared by Detectives Hartmann and Amato). Defendants object to the admissibility of these documents as unauthenticated hearsay.

As an initial matter, defendants do not object to several other unauthenticated documents offered by Medina. *See* Pl. Resp. to Def. Facts at Ex. L (emergency communications log); Ex. T (City policy on alcohol and drug dependent persons); Ex. V (traffic tickets issued by Officer Disanti); and Ex. Y (City policy on squadrol operating procedures). Indeed, defendants offer several unauthenticated documents in support of their motion for summary judgment, including the same documents offered by Medina as exhibits T and V. *See* Def. Facts at Ex. E-G and I-J. As defendants apparently recognize, these documents, as well as the documents at issue, fall within the business record exception to the hearsay rule. *See* Federal Rule of Evidence 803(6). Defendants do not dispute the documents were prepared by City employees in the course of their employment. Although defendants do not argue the documents contain statements by individuals not affiliated with the City, the court notes Medina's exhibits J and X contain third party statements. These statements, which are inadmissible hearsay, will not be considered. *See Woods*, 234 F.3d at 986,

3

*quoting United States v. Vigneau*, 187 F.3d 70, 75 (1st Cir. 1999)("business records exception does not embrace statements contained within a business record that were made by one who is not a part of the business if the embraced statements are offered for their truth").

Moreover, defendants do not contest the authenticity of the documents. Indeed, such an argument would be disingenuous when the documents at issue are business records produced by the City during discovery. Under these circumstances, the court will consider the documents offered by both sides without the required authenticating testimony. *See Woods*, 234 F.3d at 989 ("Requiring authenticating affidavits in this case would be an empty formality").

## II. Facts

The following facts are undisputed unless otherwise noted. On November 3, 2000, Vega was walking in and out of traffic in the vicinity of 3553 W. Fullerton Avenue in Chicago. Officer Riordan, along with Officer Brian Bernath, responded to a call for service regarding Vega at approximately 3:30 p.m. When the officers approached Vega, he was slurring his words and babbling in Spanish. The officers determined Vega was intoxicated. Officer Riordan then used a Spanish speaking bystander to determine Vega lived with his sister in the vicinity of Palmer and Kedzie. The officers placed Vega in their vehicle to drive him home. When the officers reached Palmer and Kedzie, they were unable to communicate with Vega due to his inebriated condition. Officer Riordan called for a squadrol to transport Vega to a detoxification facility.

The defendant officers arrived in a squadrol to transport Vega. Officer Riordan informed defendant officers that she and the other officer had unsuccessfully searched for Vega's residence. Officers Riordan and Bernath transferred custody of Vega to defendant officers at 3:53 p.m. Based on Vega's condition, defendant officers determined Vega posed a danger to himself. Vega was

4

slurring his words and had trouble standing. According to defendants, Officer Ranzzoni, who speaks Spanish, questioned Vega about his residence and learned he lived further west on Palmer. Defendant officers placed Vega in the back of the squadrol with a padded safety bar across his chest. From the cab of the squadrol, defendant officers could not visually or audibly monitor Vega in the back of the squadrol. Defendant officers knew an individual could slip onto the floor from under the padded safety bar.

After defendant officers took custody of Vega, they sent a portable data transmission ("PDT") to their sergeant, Phillip Kwasinski, to confirm dinner plans they had made earlier in the day. In the PDT, defendant officers asked Kwasinski, "Nugget at 4:00?" At 3:55 p.m., defendant officers sent a second PDT to Kwasinski, asking "Nugget in 5 minutes?" At 4:01 p.m., the defendant officers sent a final PDT to Kwasinski, asking "R U ENROUTE?" At 4:24 p.m., Kwasinski responded, "ENROUTE."

Defendant officers deny receiving Kwasinski's reply. Rather, defendant officers claim they spent the next 15 to 30 minutes looking for Vega's home. Thereafter, defendant officers transported Vega to Cook County Hospital. On their way to the hospital, defendant officers made a traffic stop and issued tickets at 5:30 p.m. According to defendants, defendant officers checked on Vega, who indicated he was fine. The defendant officers failed to include this information in several reports detailing the incident.

Defendant officers arrived at Cook County Hospital at approximately 5:55 p.m. When they went to the back of the squadrol, they found Vega unresponsive with his face against the squadrol door. The defendant officers summoned help from nurse Ingrid Monroe. When Monroe observed Vega's condition, she summoned additional emergency room personnel. The emergency room staff

5

was unable to resuscitate Vega, who was pronounced dead at 6:22 p.m. According to Monroe, defendant officers informed her they had placed Vega in the back of the squadrol and went out to dinner. According to the medical examiner, Dr. J. Lawrence Cogan, Vega accidently died of positional asphyxia. Defendants' proposed expert, Dr. Michael Baden, believes Vega died of sudden cardiac arrest.

The City has an express written policy governing the transportation of intoxicated individuals. According to the policy, police officers may take intoxicated individuals into protective custody and transport them to the closest detoxification facility or approved medical center. For at least ten years, police officers have transported intoxicated individuals to Cook County Hospital rather than the closest approved facility. The parties agree at least five or six approved facilities are closer to Palmer and Kedzie than Cook County Hospital, with the nearest approved facility located approximately 1.8 miles away.

## DISCUSSION

### I.  Defendants' Motions for Summary Judgment

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A.  Medina's Federal Claims

1.  Section 1983 Claims Against Defendant Officers

Section 1983 imposes civil liability on any person who, acting under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Medina claims defendant officers deprived Vega of due process by recklessly placing him in an unsafe environment without any means to monitor him. Defendants first argue summary judgment is proper because Medina cannot establish Vega had a constitutional right to assistance and even if he did, she cannot prove the defendant officers acted recklessly is discharging their responsibility.

As defendants point out, the due process clause of the Fourteenth Amendment does not confer an affirmative obligation on government actors to secure the life, liberty or property interests of private citizens. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 198 (1989). However, "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 200. Lmited circumstances arise: (1) in custodial settings where the state has limited the individual's ability to care for himself; and (2) when the state affirmatively places the individual in a position of danger he would not have otherwise faced. *Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1174 (7th Cir. 1997). Medina claims defendant officers were responsible for Vega's safety because they placed him in custody and in danger.

Although defendants claim Vega was never placed in custody, they admitted in their response to Medina's statement of facts, "Officers Bernath and Riordan transferred custody and control of Mr. Vega to Officers Disanti and Ranzzoni." Def. Resp. to Pl. Facts at ¶ 48. *See also* Def. Resp. to Pl.

Facts at ¶¶ 50-53 (confirming custody of Vega). Moreover, Vega's placement in a locked squadrol, secured by a padded safety bar, with no means to communicate with defendant officers presents an issue of fact as to whether he was free to leave. *See Estate of Stevens*, 105 F.3d at 1175, *quoting United States v. Mendenhall*, 446 U.S. 544, 554 (1980)("person in custody, 'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave'"). Alternatively, a reasonable factfinder could find defendant officers affirmatively placed Vega in a position of danger he would not otherwise have faced. Indeed, Oficer Disanti recognized the potential danger in placing someone in Vega's condition in an unsecured seat in the back of a squadrol unmonitored for over two hours. Although defendant officers claim Officer Ranzzoni checked on Vega just prior to their arrival at Cook County Hospital, a reasonable jury could question defendant officers' veracity based on the their failure to provide this information in their subsequent reports. Under these circumstances, a reasonable factfinder could determine defendant officers were responsible for Vega's safety because they placed him in custody and in danger.

A reasonable factfinder also could determine defendant officers acted recklessly in discharging their responsibility. "[B]y reckless or deliberately indifferent conduct, we mean conduct that is criminally reckless – that is, conduct that reflects a complete indifference to risk such that we can infer the actor's knowledge or intent." *Weinberger v. State of Wisconsin*, 105 F.3d 1182, 1186 (7th Cir. 1997), *quoting Clifton v. Shafer*, 969 F.2d 278, 281 (7th Cir. 1992). Officer Disanti recognized the danger in placing someone in Vega's condition in the back of a squadrol unmonitored for over two hours. Nevertheless, he, along with Oficer Ranzzoni, stopped for dinner and a traffic stop before delivering Vega to Cook County Hospital. A reasonable factfinder could find defendant officers' conduct reflected a deliberate indifference to Vega's safety.

8

Defendant officers next argue they are entitled to qualified immunity on Medina's § 1983 claims. To determine whether immunity attaches to defendant officers' actions, the court must undertake a two-part-test. *Ineco v. City of Chicago*, 286 F.3d 994, 1000 (7th Cir. 2002),*citing Saucier v. Katz*, 533 U.S. 194 (2001). First, the court must determine whether Medina has established a constitutional violation. *Id.* Second, the court must determine whether the constitutional right was clearly established at the time the disputed conduct took place. *Id.* Medina has established a constitutional violation. Therefore, Medina must show that Vega's right to constitutional protection was clearly established on November 3, 2000.

To defeat the defendant officers' claim to qualified immunity, Medina must show a reasonable officer would know his conduct was unlawful in the situation he confronted. *Saucier*, 533 U.S. at 202. As early as 1979, the Seventh Circuit held that police officers violated due process by placing civilians in dangerous situations. *See White v. Rochford*, 592 F.2d 381, 384 (7th Cir. 1979)(police officers left several children, including a 16 year old, in a car on the Chicago Skyway at night in cold weather after arresting the adult driver). Drawing all inferences in Medina's favor, a reasonable police officer should have realized that leaving a person in Vega's condition in the back of a squadrol for two hours unmonitored could jeopardize his safety. Although a reasonable factfinder may ultimately determine defendant officers were not deliberately indifferent to Vega's constitutional rights, disputed issues of material fact prevent a resolution of defendant officers' qualified immunity defense on summary judgment. Therefore, defendant officers' motion for summary judgment on Medina's § 1983 claims must be denied.

## 2. Section 1983 claims against the City

In order to prove her § 1983 claim against the City, Medina must establish the constitutional deprivation was caused by an official municipal policy or custom. *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978). The City does not dispute Medina can show a custom of bypassing local hospitals in favor of Cook County Hospital when transporting inebriates. *See* Reply at 2 n. 2 ("City will concede for purposes of this motion, that the plaintiff has demonstrated a "widespread practice" within the meaning of *Monell*"). Rather, the City argues Medina cannot show Vega's constitutional deprivation was caused by the custom.[1]

Medina must prove the City's custom was the "moving force" behind the alleged constitutional violation. *Monell*, 436 U.S. at 694. According to Medina, the City's custom of bypassing closer area hospitals in favor of Cook County Hospital caused Vega's death. The closest hospital to Palmer and Kedzie was less than two miles away. Defendant officers claim Vega was alive when they checked on him approximately 90 minutes after picking him up for transport. A reasonable jury could conclude Vega would still be alive if defendant officers transported Vega to one of the closer area hospitals rather than following the City's custom of transporting inebriates to Cook County Hospital. The City's summary judgment motion on Medina's § 1983 claim must be denied.

---

[1] The City spends a considerable amount of time arguing Medina's single incident claim cannot survive summary judgment without proof of a pattern of activity known by a City policymaker. "However, in cases – such as this one – where there is an acknowledged municipal policy, concerns of this sort evaporate." *James v. Milwaukee County*, 956 F.2d 696, 701 n. 4 (7th Cir. 1992).

10

## B. Medina's State Law Claims

Defendants contend they are immune from liability for Medina's state law claims pursuant to the § 4-102 of the Illinois Tort Immunity Act ("ITIA"), 745 ILCS 10/4-102 (1994). Section 4-102 provides:

> [N]either a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. This immunity is not waived by a contract for private security service, but cannot be transferred to any non-public entity or employee.

*Id.* Section 4-102 extends not only to the provision of police services, but also the provision of adequate police services. *See Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 345, 692 N.E.2d 1177, 1183 (1998)(the public duty rule, codified through ITIA, "prevents [governmental] units from being held liable for their failure to provide adequate governmental services"). Medina claims defendant officers acted negligently and willfully and wantonly in providing a police service to Vega. Section 4-102 bars all theories of tort liability, including claims of willful and wanton misconduct. *McLellan v. City of Chicago Heights*, 61 F.3d 577, 579 (7th Cir. 1995), *citing Platacis v. Village of Streamwood*, 224 Ill. App. 3d 336, 586 N.E.2d 564 (1st Dist. 1991). Therefore, defendants are entitled to immunity on Medina's state law claims.

## CONCLUSION

Defendants are entitled to judgment as a matter of law on Medina's state law claims. Defendants' motions for summary judgment as to Medina's § 1983 claims are denied. Officer Riordan is dismissed from this action with prejudice.

September 6, 2002

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon